FILED
SUPERIOR COURT
OF GUAM

2022 JAN -4 PM 1: 50

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM<br><br>                              Plaintiff,<br><br>          vs.<br><br>SIMINA KIKKU,<br>(*aka* Pat Kiku)<br><br>                              Defendant. | Case No. CF0187-21<br><br>**DECISION AND ORDER**<br>(Motion to Suppress Defendant's<br>Statement's and Physical Evidence) |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on October 15, 2021, for an evidentiary hearing on Simina Kikku's ("Defendant") Motion to Suppress Defendant's Statements and Physical Evidence ("Motion to Suppress"), filed on September 20, 2021. Assistant Public Defender Brycen J. Breazeale represents Defendant. Assistant Attorney General Rolland B. Wimberley represents the People of Guam ("People"). Having duly considered the parties' briefs, testimony of witnesses, oral arguments, and the applicable law, the Court now issues this Decision and Order **GRANTING** the Defendant's Motion to Suppress.

## BACKGROUND

On April 13, 2021, a Grand Jury indicted Defendant on Possession of a Controlled Substance (As a Third Degree Felony) and Operation of a Motor Vehicle Without a License (As a Violation). Indictment, Apr. 13, 2021. On September 20, 2021, Defendant filed the instant motion. Mot. to Suppress Def.'s Statements and Physical Evidence (hereinafter "Mot. to Suppress"), Sept. 20, 2021. The People filed an opposition. People's Opp'n. to Mot. to Suppress Evidence ("Opp'n."), Oct. 8, 2021. On October 15, 2021, the Court held an evidentiary hearing on the motion and took the parties' arguments under advisement. Minute Entry, Oct. 15, 2021.

## FINDINGS OF FACT

Guam Police Department ("GPD") Officer Pewtress was the only witness called by the People during the evidentiary hearing. Digital Recording at 2:34:57–3:11:57 (Mot. H'rg. October 15, 2021). Defendant did not call any witnesses. *Id.* From the testimony received from this witness the Court finds:

On February 26, 2021 at approximately 7:00pm, GPD Officer Pewtress was driving northbound on Route 16 when he observed a vehicle driving southbound that did not have a front license plate. Digital Recording at 2:34:57–2:38:38 (Mot. H'rg. October 15, 2021). Driving without a front license plate is a violation. *Id.* Officer Pewtress observed the vehicle make a U-turn. *Id.* When it did, he noticed that the right rear taillight was defective. *Id.* He could tell that the right taillight was defective because the left taillight was operating normally. *Id.* Officer Pewtress then conducted a traffic stop in the parking lot of the apartment complex next to Maxi Mart. *Id.* Officer Pewtress greeted Defendant and asked him to roll down the windows because they were tinted. Digital Recording at 2:38:38–2:42:33 (Mot. H'rg. October

15, 2021). Defendant rolled down the driver's window and rear driver's side window. *Id.* Officer Pewtress noticed that Defendant was antsy and nervous. *Id.* Throughout the course of the traffic stop, Defendant continuously chattered his teeth and moved his arms and neck, which are indicators of stimulant use. *Id.* Additionally, he shuffled a fanny pack around his waist, which he eventually removed and placed on the floorboard of the vehicle. *Id.* Officer Pewtress asked for consent to search the fanny pack, but Defendant refused consent. Digital Recording at 2:42:33–3:11:57 (Mot. H'rg. October 15, 2021).

A vehicle driven by Defendant's wife arrived shortly after the traffic stop commenced. Digital Recording at 2:38:38–2:42:33 (Mot. H'rg. October 15, 2021). Defendant's wife parked her vehicle facing the driver's side of Defendant's vehicle at an angle, about fifteen feet from Defendant's vehicle. *Id.* Defendant's wife exited the vehicle, but the "several other passengers" in her vehicle remained inside. Digital Recording at 2:42:33–3:11:57 (Mot. H'rg. October 15, 2021). Officer Pewtress parked facing the Defendant's vehicle. *Id.* Upon the arrival of Defendant's wife, Officer Pewtress turned away from Defendant's vehicle and began walking to his vehicle to call for back-up. *Id.* In doing so, he partially turned his back to Defendant's vehicle. *Id.* While he was walking towards his vehicle, Officer Pewtress heard a "distinct chain link rattling sound." *Id.* Based on the sound, Officer Pewtress figured that someone had thrown something at the fence along the parking lot. *Id.* He heard something hit the fence, but he did not actually see anyone throw anything. *Id.* Defendant was inside of his vehicle when Officer Pewtress heard the sound. *Id.* Defendant's wife was outside of her vehicle, and the other people in her vehicle were inside of her vehicle when Officer Pewtress heard the sound. *Id.* Officer Pewtress is unsure if the windows on Defendant's wife's vehicle were rolled down, but he believes that they were. *Id.* Officer Pewtress inspected the area of

the fence from where the sound came and discovered a glass pipe with suspected methamphetamine residue. *Id.* Officer Pewtress did not see anyone standing around the parking lot near the fence. *Id.* After discovering the pipe, Officer Pewtress asked Defendant to step out of the vehicle and when he did, Officer Pewtress placed him under arrest. *Id.* Following Defendant's arrest, Officer Pewtress searched the vehicle and found another glass pipe with suspected methamphetamine residue. *Id.*

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam via section 1421b(c) of the Organic Act of Guam. *People v. Johnson*, 1997 Guam 9 ¶ 4. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968)). Every search or seizure must be reasonable under the circumstances to pass muster under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810 (1996).

**A. The initial stop of Defendant was a valid *Terry* stop under the Fourth Amendment.**

The Fourth Amendment to the United States Constitution "permits brief investigative detentions when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "The *Terry* stop doctrine has been extended to justify the investigatory stop of a motor vehicle." *Johnson*, 1997 Guam 9 ¶ 4 (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation had occurred.

Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *People v. Charagulaf*, 2001 Guam 1 ¶ 17 (citations omitted).

"In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 4. Furthermore, reasonable suspicion must exist at the time the stop was initiated. *Id.* The "lawfulness of a *Terry* stop turns not on the officer's actual state of mind at the time the challenged action was taken, but rather on an objective assessment of the officer's actions. In other words, if sufficient evidence exists to demonstrate reasonable suspicion, a *Terry* stop is justified regardless of a police officer's subjective intent." *United States v. Branch*, 537 F. 3d 328, 337 (4th Cir. 2008). Under Guam law, it is unlawful to operate a vehicle without a front license plate, and it is unlawful to operate a vehicle with a defective taillight. GCA 16 § 7120(a); GCA 16 § 3201.

Defendant argues that Officer Pewtress did not have reasonable suspicion to stop Defendant because taillights do not need to be on at 7:00pm. Digital Recording at 2:42:33–3:11:57 57 (Mot. H'rg. October 15, 2021). Defendant further argues that Officer Pewtress only saw Defendant's lack of front license plate for a few seconds while he passed him on Route 16, which is not enough time to observe that a front license plate is missing. *Id.* However, Officer Pewtress testified that he could tell that the right taillight was defective because the left taillight was operating normally. Digital Recording at 2:38:38–2:42:33 (Mot. H'rg. October 15, 2021). The Court finds that Officer Pewtress would have observed the difference in color between the two taillights and discovered the defective taillight. Additionally, the Court finds that Officer

Pewtress—who was patrolling Route 16 and is trained to look for traffic violations—would have observed the missing license plate while passing Defendant. Therefore, because Officer Pewtress observed two traffic violations, he had reasonable suspicion to pull over Defendant for a valid *Terry* stop.

**B. Defendant's arrest was invalid because Officer Pewtress did not establish the Defendant had possession and control over the glass pipe discovered by the fence.**

Whether the arrest of a defendant without a warrant is constitutionally valid depends upon ". . . whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that defendant had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 85, 89 (1964); *see also People v. Cundiff*, 2006 Guam 12 ¶ 16.

In this case, probable cause to arrest defendant comes from the glass pipe found near the fence. In order to demonstrate that Defendant had committed the offense of possessing the glass pipe, the People must establish that Defendant had constructive possession of the glass pipe. "[Constructive possession] simply reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his person at the time of arrest." *United States v. Disla*, 805 F.2d 1340, 130 (1986). "Mere proximity to contraband, presence on property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession." *United States v. Duenas*, 691 F.3d 1070, 1084 (9th Cir. 2012) (citation omitted). The government may demonstrate constructive possession by producing direct or circumstantial evidence that a defendant had the power to depose of the drug. *United States v. Disla*, 805 F.2d 1340, 130 (1986).

Officer Pewtress testified that he did not know who threw the glass pipe against the fence; he only heard the sound of the pipe hitting the fence. Digital Recording at 2:42:33–3:11:57 57 (Mot. H'rg. October 15, 2021). Defendant, Defendant's wife, and "several other people" were all present at the scene. *Id.* Defendant's wife was outside of her vehicle and Defendant was inside of his vehicle with the windows rolled down. *Id.* Officer Pewtress is unsure if the windows on Defendant's wife's vehicle were rolled down. *Id.* Accordingly, the Court finds is not clear that Defendant threw the glass pipe. Another person present at the scene is just as likely as Defendant to have thrown the glass pipe. Officer Pewtress did not question the other people present at the scene upon discovering the glass pipe. *Id.* After Officer Pewtress arrested Defendant, Defendant's wife asked Officer Pewtress why he arrested Defendant and Officer Pewtress explained it was because of the glass pipe. *Id.* Besides that exchange, nothing in the record shows any discussion with anyone other than Defendant about the glass pipe found near the fence. The People offer no circumstantial or direct evidence that Defendant had the power to dispose of the glass pipe. Likewise, the Court finds nothing in the record suggesting that Defendant possessed the glass pipe prior to Officer Pewtress finding it near the fence.

Officer Pewtress testified that he assumed the glass pipe was Defendant's because Defendant was exhibiting signs of stimulant use and "shifting" a fanny pack. *Id.* When Officer Pewtress asked for consent to search the fanny pack, Defendant refused. *Id.* Signs of stimulant use and refusing to consent to a search of a bag are not sufficient to warrant an officer to believe that a person is committing an offense. Likewise, they are not circumstantial evidence that establishes Defendant had the power to dispose of the glass pipe found near the fence. Taken with other evidence, it might be enough to establish probable cause to arrest Defendant for

possession of the glass pipe. However, the Court does not find any other evidence that would support probable cause in the record. Officer Pewtress also stated that Defendant had a lighter, which Defendant may have used to smoke methamphetamine. *Id.* However, Defendant's counsel correctly points out that Defendant may have used the lighter for legal purposes. *Id.* All Officer Pewtress knew was that someone threw a glass pipe with methamphetamine residue within the proximity of Defendant's car; missing from the record is evidence illustrating Defendant had control over the glass pipe prior to its discovery near the fence. Officer Pewtress's testimony that he heard something hit the fence and then discovered a glass pipe near the fence is not sufficient to demonstrate Defendant had constructive possession of the glass pipe, nor is it sufficient to establish probable cause. Thus, Defendant's arrest was invalid under the Fourth Amendment.

The exclusionary rule bars the prosecution from using evidence at trial that the government obtained through a violation of the Fourth Amendment. *U.S. v. Shetler*, 665 F.3d 1150, 1156–57 (9th Cir. 2011) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 484–85 (1963)). The goal of the rule is to deter violations of the Fourth Amendment, including unreasonable searches and seizures. *Id.*

Therefore, because the Court finds no evidence that Defendant exercised constructive control over the glass pipe with suspected methamphetamine found near the fence, the exclusionary rule operates to suppress such item from use against Defendant at trial

**C. Under the fruit of the poisonous tree doctrine, the glass pipe found in the vehicle is a product of an unreasonable arrest and subsequent search.**

Evidence gathered as a direct result of an unlawful search is "fruit of the poisonous tree" and is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *People v. Cundiff*, 2006 Guam 12 ¶ 41. Before suppressing evidence as fruit of the poisonous tree, the Court must

determine if the People obtained the challenged evidence because of police exploitation of the initial illegality. *People v. Cundiff*, 2006 Guam 12 ¶ 41 (citing *Segura v. United States*, 468 U.S. 796, 804–05 (1984)). If the police arrived at the evidence by independent means, then the independent means purge the taint. *Id.* The People have the burden to "break the causal connection" between the unlawful search and the evidence that the Defendant alleges fruit of the poisonous tree. *People v. Cundiff*, 2006 Guam 12 ¶ 41.

Following the discovery of the glass pipe next to the fence, Officer Pewtress ordered Defendant out of the vehicle and arrested him for possession of suspected methamphetamine. Digital Recording at 2:42:33–3:11:57 57 (Mot. H'rg. October 15, 2021). The People argue that Officer Pewtress had probable cause to search the vehicle as a "contemporaneous" search to the arrest for the glass pipe. Opp'n. at 3. They posit that the discovery of the glass pipe near the fence, the arrest of Defendant, and observation that Defendant appeared to be on stimulants create probable cause to search the vehicle. *Id.* Yet, as discussed above, Defendant's arrest was not a valid arrest.

The People assert that Officer Pewtress had probable cause to make the arrest based on the entire interaction, not just the discovery of the glass pipe near the fence. Digital Recording at 2:42:33–3:11:57 57 (Mot. H'rg. October 15, 2021). The Court is not satisfied that the observation that Defendant appeared to be on stimulants and the discovery of a glass pipe near the fence is sufficient to warrant Officer Pewtress believed that Defendant may have committed Possession of a Schedule II Controlled Substance. Officer Pewtress testified that he did not know who the glass pipe belonged to, and that there were "several people" in Defendant's wife's vehicle. *Id.* Officer Pewtress also acknowledged that in his experience, it is normal for individuals who are pulled over to act nervous. *Id.* Accordingly, there was no probable cause to arrest Defendant and the search incident to the arrest is invalid. Nothing in the record

suggests that Officer Pewtress would have discovered the glass pipe in the vehicle without searching the vehicle after arresting Defendant. Consequently, the only reason Officer Pewtress found the glass pipe in the vehicle was because of the unlawful arrest of Defendant. The Court orders the glass pipe with suspected methamphetamine found in Defendant's vehicle suppressed.

## CONCLUSION AND ORDER

For the above reasons, the Court **GRANTS** Defendant's Motion to Suppress and **ORDERS** both the glass pipe found near the fence and the glass pipe found in Defendant's vehicle inadmissible.

SO ORDERED, this ___04___ day of __January__ 2022.

_____

HONORABLE ALBERTO E. TOLENTINO

Judge, Superior Court of Guam